Martha Hill Jamison, Justice
This is an interlocutory appeal from the grant of a motion to suppress a confession. Appellee Eric Cornelius Norris, Jr. was charged with capital murder in the course of a robbery. The trial court granted appellee's motion to suppress his confession based on a finding that appellee had unequivocally and unambiguously invoked his right to counsel during questioning. Concluding that appellee did not, in fact, unequivocally and unambiguously invoke his right to counsel, we reverse the trial court's order and remand for further proceedings.
The Interrogation
On July 31, 2014, appellee was interrogated by Detective Allen Mutchler and then by Detective Henry Garza, both of the Stafford Police Department, concerning a murder that occurred during the course of a robbery. At the beginning of the recorded interview, appellee answered Mutchler's standard booking questions, and Mutchler read appellee his Miranda rights. See Miranda v. Arizona , 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellee stated that he understood his rights and agreed to talk to Mutchler.
For over an hour, Mutchler questioned appellee about his links to other individuals, past criminal history, and ownership or possession of firearms. Mutchler also pressed appellee to tell him about the robbery, whose idea it was, how it transpired. Mutchler told appellee that he was not going to walk out a free man because they knew that appellee was involved but appellee might mitigate his punishment by cooperating. Appellee insisted that he did not know anything, but he also asked Mutchler questions, such as "so, basically, if I can't come up with a story my charges go[ ] to capital?"
About an hour and twenty minutes into the interrogation, appellee mentioned wanting to make a telephone call, and he mentioned obtaining a lawyer. It is this part of the interrogation that formed the basis of appellee's motion to suppress, which the trial court granted.[1] At times, the audio quality of the videotape makes it *865 difficult to determine the precise words appellant used. The videotape and a transcript of it were admitted into evidence at the hearing on the motion to suppress, but no witness testified. The most relevant portion of the transcript reads as follows:
Appellee: Am I gonna be here all day doin' this?
Mutchler: It looks like. I was hopin' you'd get tired of it and tell me the truth.
Appellee: I'm just ready to make my phone call.
Mutchler: You don't like talking to me?
Appellee: Oh, it's okay talking to you. I'm just sayin' I can talk to you. I just want to make a phone call and call my sister and see if she could-
Mutchler: Well, not 'til we're through here.
Appellee: Well, give me a lawyer or something 'cause I'm not sure I have.
Mutchler then asked appellee whether he would be able to post a bail bond and told appellee that he would be able to make a phone call when he returned to the jail.
In his findings of fact, the trial judge found that the transcript accurately reflected the last line excerpted above: "Well, give me a lawyer or something 'cause I'm not sure I have." And on the basis of that line, the judge concluded that appellee had "unequivocally and unambiguously invoked his right to counsel." However, our review of the videotape reveals that the relevant exchange between appellee and Mutchler ended as follows:
Appellee: Oh, it's okay talking to you. I'm just sayin,' I can talk to you, I just want to make a phone call and call my sister and see if she could-
Mutchler: Well, not 'til we're through here.
Appellee: ... go get me a lawyer or something 'cause that's the only option I have.
As illustrated, Mutchler speaks over and interrupts appellee.[2]
Sometime after this exchange and further questioning by Mutchler, Mutchler left the interrogation room. Garza entered the room shortly thereafter, and, ultimately, appellee acknowledged that he had caused a person's death during the commission of a robbery. In his motion to suppress, appellee complained of the continued interrogation after he mentioned obtaining a lawyer and that Garza did not again read appellee's Miranda rights when he began questioning appellee. The trial court granted the motion based on the alleged invocation of counsel and therefore suppressed all appellee's statements after he mentioned obtaining counsel. The trial court further found that the break between Mutchler's interrogation and Garza's did not warrant a new reading of appellee's rights. This State's appeal concerns only the alleged invocation of counsel.
Governing Law
We review a trial court's ruling on a motion to suppress under a bifurcated standard. Delafuente v. State , 414 S.W.3d 173, 177 (Tex. Crim. App. 2013). We afford almost complete deference to the trial court's determination of historical facts, especially when based on "an assessment *866 of credibility and demeanor," but conduct a de novo review of mixed questions of law and fact that do not hinge on credibility or demeanor determinations. Crain v. State , 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). When, as here, a trial judge makes express findings of fact, we view the evidence in the light most favorable to the ruling and determine whether the evidence supports these factual findings. Valtierra v. State , 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We will sustain the trial court's ruling if that ruling is reasonably supported by the record and is correct on any theory of law applicable to the case. Id. at 447-48.
In his motion to suppress, appellee asserted that interrogating officers violated his Fifth Amendment right to counsel. See U.S. Const. amends. V, XIV ; Miranda , 384 U.S. at 467, 86 S.Ct. 1602 ; see also Tex. Code Crim. Proc. art. 38.22.[3] Once a suspect invokes the Fifth Amendment right to counsel during questioning, interrogation must cease until counsel has been provided or the suspect reinitiates a dialogue. State v. Gobert , 275 S.W.3d 888, 892 (Tex. Crim. App. 2009). Not every mention of a lawyer, however, constitutes an invocation of the right to counsel; an ambiguous or equivocal statement does not require officers to halt an interrogation or even seek clarification. Id. Whether a particular mention of a lawyer constitutes a clear invocation depends upon the contents of the statement itself and the totality of the surrounding circumstances. Id. The test is objective in nature, i.e., "the suspect must articulate [a] desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Id. at 892-93 (quoting Davis v. United States , 512 U.S. 452, 458-59, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) ).
Application of Law to Facts
As set forth above, the trial judge found that the transcript accurately reflected appellee stating, "Well, give me a lawyer or something 'cause I'm not sure I have." And on the basis of this statement, the judge concluded appellee had unequivocally and unambiguously invoked his right to counsel. On the videotape, appellee actually says, "I just want to make a phone call and call my sister and see if she could [interruption by Mutchler] go get me a lawyer or something 'cause that's the only option I have." However, neither statement under the totality of the circumstances constituted an unequivocal and unambiguous invocation of the right to counsel.[4]
Appellee's statement on the video indicated he wanted to call his sister so that *867 she could try to locate a lawyer to represent him. It was a forward-looking statement, contemplating his sister's starting the process of obtaining a lawyer. See Collins v. State , 727 S.W.2d 565, 568-69 (Tex. Crim. App. 1987) (holding defendant's inquiry regarding lawyer did not invoke right to counsel during interrogation because it was directed to whether counsel would be appointed in the future and not in reference to his custodial statement); Massengale v. State , 710 S.W.2d 594 (Tex. Crim. App. 1986) (holding defendant did not invoke right to counsel by telling his wife to hire a lawyer); Curtis v. State , 640 S.W.2d 615, 618 (Tex. Crim. App. 1982) (holding defendant's statement that he thought his brother was getting him an attorney referred to how he would be provided a court-appointed attorney and was not an invocation of the right to counsel during questioning).
Appellee's statement was neither unambiguously a request for counsel nor an indication that appellee wished to have counsel present for further questioning. In fact, immediately before saying he wanted to call his sister, appellee stated that he was "okay" talking to Mutchler. Viewed from the standpoint of a reasonable officer in Mutchler's position and under the totality of the circumstances, appellee's statement was not an unambiguous and unequivocal invocation of the right to counsel. See Davis v. State , 313 S.W.3d 317, 338-41 (Tex. Crim. App. 2010) (holding statement "I should have an attorney" was not an unambiguous invocation under the circumstances); Molina v. State , 450 S.W.3d 540, 547-48 (Tex. App.-Houston [14th Dist.] 2014, no pet.) (holding statement "[i]f ya'll got videos [and] if y'all got all that then I'll wait til my lawyer comes in" was not an unambiguous invocation).
Even the statement reflected in the transcript, "[w]ell, give me a lawyer or something 'cause I'm not sure I have," does not constitute an unequivocal and unambiguous invocation of appellant's right to counsel. The statement is-at the least-incomplete. Moreover, viewed in conjunction with the first part of appellee's statement, which Mutchler interrupted, the statement reflected in the transcript again appears to be forward-looking. Also as stated above, appellee had indicated that he was "okay" talking to Mutchler. Viewed from the standpoint of a reasonable officer and under the totality of the circumstances, the statement in the transcript was not an unambiguous and unequivocal invocation of the right to counsel. See Davis , 313 S.W.3d at 338-41 ; Molina , 450 S.W.3d at 547-48.
Having concluded that the trial court erred in determining that appellee unambiguously and unequivocally invoked his right to counsel, we sustain the State's sole issue and reverse the trial court's order striking the portions of the videotaped statement occurring after the alleged invocation of counsel. We remand for further proceedings consistent with this opinion.

In his motion, appellee also complained that he was not again given his Miranda rights when Detective Garza replaced Mutchler as the interrogator. The trial court denied this portion of the motion.

As will be discussed in the final section of the opinion, we conclude that neither the line as reflected in the transcript nor as heard on the videotape constituted an unequivocal and unambiguous invocation of the right to counsel.

Appellee's brief references his Sixth Amendment right to counsel; however, because Sixth Amendment rights did not apply to appellee's pre-arraignment custodial interrogation, we construe his argument as referencing his Fifth Amendment rights. "The Fifth Amendment right to interrogation counsel is triggered by the Miranda warnings that police must give before beginning any custodial questioning. The Sixth Amendment right to trial counsel is triggered by judicial arraignment or Article 15.17 magistration." Pecina v. State , 361 S.W.3d 68, 71 (Tex. Crim. App. 2012).

We note that even though the determination of historical fact from a videotape typically does not involve an assessment of credibility or demeanor, see Carmouche v. State , 10 S.W.3d 323, 332 (Tex. Crim. App. 2000), we still apply a deferential standard of review to the trial court's findings. See Montanez v. State , 195 S.W.3d 101, 109 (Tex. Crim. App. 2006). However, those determinations must still be supported by the record. See Valtierra , 310 S.W.3d at 447-48.